# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **VFS LEASING CO.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.:  7:11-cv-00272-JEO |
| ) | |
| **S.T.I., Inc., et al.,** ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the court on the parties' cross motions for summary judgment, specifically – Defendants' Motion for Partial Summary Judgment (doc. 11) and Plaintiff's Motion for Summary Judgment (doc. 12). The motions have been fully briefed and are properly under submission before the court. (Docs. 11-1, 13, 14, 15 & 18). Plaintiff's Amended Complaint seeks to recover damages stemming from Defendants' default of their obligations under two leases. (Doc. 22). Defendants admit they are liable for breaching the lease agreements, but dispute the amount of damages. (Doc. 11-1 at 2). Specifically, Defendants contest that the liquidated damages provision contained in the Master Lease is enforceable. (*Id.*) The only question before the court is whether the liquidated damages provision should be used to calculate the damages in this case. As explained more fully below, the court finds that it should.

**I.    FACTS**

   **A.    TERMS OF THE LEASES**

This case concerns two separate leases entered into by the parties – Plaintiff as Lessor and Defendants as Lessee. The first lease (the "Schedule One Lease"), for ten tractor trailer trucks, was entered into on June 12, 2007, and the second lease (the "Schedule Two Lease"), for five

additional tractor trailer trucks, was entered into on January 24, 2008.[1] (Docs. 12-4, 12-7). Each lease was made up of a Master Lease and a Terminal Rental Adjustment Schedule. (Docs. 12-3, 12-4, & 12-7). In early December 2009, both leases were modified to extend the terms of the leases – the modification of the Schedule One Lease provided for 32 monthly rental payments in the amount of $21,004.05 per month and the modification of the Schedule Two Lease provided for 40 monthly rental payments in the amount of $10,565.94 per month. (Docs. 12-6, 12-8).

Thus, under the terms of the modified leases, Defendants agreed to pay $1,094,767.20 in rent on both leases over the relevant lease terms.[2] In addition to the rent owed on the trucks, the leases also provide for the disposal of the trucks at the end of the lease term. (Docs. 12-4 at 2, 12-7 at 2). In part, the leases provide as follows:

> 5. **Option to Purchase**. So long as no Event of Default has occurred and is continuing under the Agreement, Lessee shall have the right to purchase all, but not less than all, of the Equipment on the Lease Termination Date. Lessee shall give Lessor at least 90 days and not more than 180 days advance written irrevocable notice of its intent to exercise such purchase option prior to the Lease Termination Date. On or before the Lease Termination Date, Lessee shall purchase all of the Equipment for a price equal to 25.00% of the Lessor's Cost of the Equipment (the "Purchase Price"), net of all costs and expenses of the transaction (which costs and expenses, whether assessed to Lessor or Lessee, shall be paid by Lessee). The Purchase Price shall be paid to Lessor in immediately available funds on or before the Lease Termination Date....
>
> 6. **Sales**. If Lessee does not exercise the purchase option provided in Section 5 above, Lessor shall attempt to sell the Equipment. Lessor may reject any bid obtained, the Net Sales Proceeds of which would be less than the Purchase Price due upon exercise of the purchase option. Unless otherwise agreed by Lessor, all such sales shall close and Lessor shall receive the New Sales Proceeds on or before the Lease Termination Date....

---

[1] Defendant Phillip Cooper personally guaranteed both leases. (Doc. 12-5).

[2] Under the modified leases Defendants agreed to pay $672,129.60 over the term of the Schedule One Lease and $422,637.60 over the term of the Schedule Two Lease. (Docs. 12-6, 12-8).

> **7. Re-Delivery**. Lessee shall return all Equipment not purchased or sold in accordance with Sections 5 and 6 above to Lessor on or before the Lease Termination Date. The Equipment shall be in a condition satisfying all of the requirements of the Agreement. If any item of Equipment is not returned in the condition required under the Agreement, Lessee shall purchase such Equipment for the Purchase Price with payment in full due on or before the Lease Termination Date.
>
> **8. Final TRAC Adjustment**. If, on the completion of all purchase, sales and sales of re-delivered Equipment described in Sections 5-7 above Lessor has not received in cash a net amount in respect of such purchases and sales equal to the Purchase Price of all of the Equipment plus all other amounts due under the Agreement, Lessor may retain all payments previously made to it and Lessee shall immediately pay any remaining balance of the Purchase Price, plus interest at a rate of 18% per year from the Lease Termination Date to the date of such payment, to Lessor. If, on such completion, Lessor has received Net Sales Proceeds in excess of the Purchase Price of all Equipment and all other amounts due under the Agreement, plus interest on the Purchase Price at the at the rate of 18% per year from the Lease Termination Date to the date of receipt of all of the Purchase Price, Lessor shall pay the excess to Lessee. Lessee agrees that this TRAC adjustment is not intended to give Lessee any equity or ownership interest in the Equipment but is required so that Lessee will have a financial incentive to maintain the Equipment in the condition by this Agreement at all times during the Lease Term.

(Docs. 12-4 at 2, 12-7 at 2). In other words, in addition to the monthly rent, the parties also agreed that at the end of the lease term, Defendants would either buy the trucks from Plaintiff for a price equal to 25% of the Lessor's Cost for the Equipment ("Purchase Price") or Plaintiff could try to sell the trucks. (*Id.*) With respect to the sale of the trucks, if the sales amount was less than 25% of the Lessor's Cost for the Equipment, Defendants would be obligated to make up the difference between the sales price and the Purchase Price. (*Id.*) However, if the sales price exceeded the Purchase Price, the difference would be paid to Defendants. In short, regardless of whether Defendants purchased the trucks or they were sold to a third party, at the end of the lease term, Plaintiff would receive a final payment in the amount of 25% of the Lessor's Cost for the

Equipment.

The leases also contemplated what would occur if Defendants were to default on the leases. Pursuant to the Master Lease: "Each of the following shall constitute an 'Event of Default' which will allow Lessor to exercise all of its rights under this Agreement and applicable law: (a) Lessee fails to make any payment in full when due under this Agreement or any Schedule...." (Doc. 12-3 at 3). The Master Lease further provides that "whenever an Event of Default has occurred under this Agreement, Lessor will have all the rights and remedies provided by this Agreement, the UCC, and other applicable law." (*Id.*) The remedies provided by the agreement include the following:

> At the option of Lessor, with or without notice, Lessee's rights to the Equipment may be canceled and all rental payment and other amounts then owing under this Agreement will be immediately due and payable in full, together with all costs and expenses, including attorneys' fees.... Lessor may take possession of any item of Equipment (with or without legal process) and, to the extent permitted by law, may enter any locked or unlocked premises for that purpose. Lessor may, at its option, sell, lease, or otherwise dispose of any or all of the Equipment after it obtains possession. Upon the sale of any item of Equipment, Lessee will pay to Lessor immediately, as liquidated damages for loss of bargain and not as a penalty, the amount, if any by which the Stipulated Loss Value exceeds the net sales proceeds of such Equipment in addition to all other amounts due....

(Doc. 12-3 at 3-4). "As of any applicable date, the Stipulated Loss Value for [any] Equipment is the Lessor's Cost as shown on the applicable Schedule multiplied by the Stipulated Loss Factor as of the applicable date and as designated on Exhibit A to such Schedule." (*Id*. at 2). The relevant tables of Stipulated Loss Factors are attached as Exhibit A to each Lease Modification. (Docs. 12-6 at 2, 12-8 at 2).

B. **DEFENDANTS' DEFAULT**

Shortly after the lease modifications, Defendants stopped making payments on the lease

as required by the agreements. On March 4, 2010, Plaintiff made a demand on Defendant S.T.I. to pay the outstanding lease payments due under the Schedule One and Schedule Two Lease Agreements. (Doc. 11-8). Despite the referenced demand, Defendants failed to pay the past due lease payments. *(See* Doc. 12-10). Accordingly, on March 31, 2010, Plaintiff provided written notice of cancellation of the Schedule One and Schedule Two Lease Agreements to the Defendants. (Doc. 11-9).

Thereafter, the Plaintiff repossessed the trucks pursuant to the terms and conditions of the leases. (*See* Doc. 12-10). On May 25, 2010, Plaintiff notified Defendants that, due to their default in payment, the trucks would be sold at a private sale after June 6, 2010. (Doc. 11-10). The sale of the Schedule One trucks resulted in proceeds in the gross amount of $393,500.00. (Doc. 12-10). The sale of the Schedule Two trucks resulted in proceeds in the gross amount of $235,000.00. ( *Id*.)

On September 22, 2010, and October 5, 2010, respectively, Plaintiff made demands for payments of the Deficiency Balance in the amount of $903,626.35 ($594,388.49 owed on the Schedule One Lease Agreement and $309,237.86 owed on the Schedule Two Lease Agreement). (Doc. 11-11). Plaintiff filed suit to recover its damages on January 27, 2011. (Doc. 1).

## II.   STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc*., 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam ) (citation to former rule omitted); FED. R. CIV. P. 56(a) ("The court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[3] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [-now dispute-] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251-52). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249;

---

[3] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word-genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id.* "'Shall' is also restored to express the direction to grant summary judgment." *Id.* Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

*accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden" so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988) (quoting *Anderson*, 477 U.S. at 254). Nevertheless, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference, but only of every reasonable inference. *Brown v. Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Allen*, 121 F.3d at 646.

## III.   DISCUSSION

The equipment leases at issue are governed by Article 2A of the Uniform Commercial Code, as adopted in North Carolina.[4] The question before the court is whether the liquidated damages provision of the leases is enforceable. The relevant North Carolina statute provides:

> (1) Damages payable by either party for default, or any other act or omission, including indemnity for loss or diminution of anticipated tax benefits or loss or damage to lessor's residual interest, may be liquidated in the lease agreement but only at an amount or by a formula that is reasonable in light of the then-anticipated harm caused by the default or other act or omission.

N.C. Gen. Stat. § 25-2A-504. In short, the question here is whether the liquidated damages provision is reasonable in light of the then-anticipated harm caused by the default.

> "The basic test of the reasonableness of an agreement liquidating damages is whether the stipulated amount or amount produced by the stipulated formula represents a reasonable forecast of the probable loss." 3A Hawkland and Miller, *Uniform Commercial Code Series* § 2A–504:02 (1993). However, "no court

---

[4] The choice-of-law provisions of the Master Lease and the Guaranty state that they are governed by North Carolina law. (Docs. 12-3, 12-5)

>should strike down a reasonable liquidated damage agreement based on foresight that has proved on hindsight to have contained an inaccurate estimation of the probable loss...." *Id.* And, "the fact that there is a difference between the actual loss, as determined at or about the time of the default, and the anticipated loss or stipulated amount or formula, as stipulated at the time the lease contract was entered into ...," does not necessarily mean that the liquidated damage agreement is unreasonable. *Id.* This is so because "[t]he value of a lessor's interest in leased equipment depends upon 'the physical condition of the equipment and the market conditions at that time.' " *Pacificorp Capital, Inc. v. Tano, Inc.,* 877 F.Supp. 180, 184 (S.D.N.Y.1995) (citation omitted).

*Coastal Leasing Corp. v. T-Bar S Corp.*, 496 S.E.2d 795, 798 (N.C. Ct. App. 1998). The North Carolina Court of Appeals further stated that

>[A] court should keep in mind that the clause was negotiated by the parties, who are familiar with the circumstances and practices with respect to the type of transaction involved, and the clause carries with it a consensual apportionment of the risks of the agreement that a court should be slow to overturn.

*Id.* (quoting 3A Hawkland and Miller, *Uniform Commercial Code Series* § 2A–504:02 ) (internal quotation marks omitted).

Here, Defendants argue that the liquidated damages clause is not reasonable in light of the then-anticipated harm caused by the default because the damages amount calculated using the Stipulated Loss Value, as provided for in the leases, is significantly higher than "The Actual Deficiency Balance," as calculated by Defendants. According to Defendants, they owe Plaintiff $465,767.20, or as they call it, the Actual Deficiency Balance. This number is determined by subtracting the total sales proceeds of the trucks ($629,000.00) from the total amount of the accelerated, unpaid rent owed ($1,094.767.20).[5] (Doc. 11-1 at 17). Presumably, this figure is

---

[5] After the modification of the leases, the Schedule One lease called for 32 monthly payments of $21,004.05 equaling $672,129.60 and the Schedule Two lease called for 40 monthly payments of $10,565.94 equaling $422,637.60. (Docs. 12-6, 12-8). However, Plaintiff represents that Defendants made a partial payment on the Schedule One lease of $1,632.36, and one month's payment on the Schedule Two lease after the modification. (Doc. 14 at 10-11). Accounting for these two payments, the outstanding rent owed would be $1,082,568.90. However, the discrepancy in these numbers is immaterial.

designed to represent the loss caused by the default. However, in reaching this number, Defendants have overlooked a critical portion of the lease. Had Defendants performed their obligations under the lease, at the end of the lease term, Plaintiffs would also have been entitled to the equivalent of 25% of the Lessor's Cost for the Equipment, in this case a total of an additional $476,866.25.[6] (Docs. 12-4, 12-7). In other words, absent the default, Plaintiff would have received *both* the remaining rent of $1,094,767.20 *and* a sum of money equal to 25% of the Lessor's Cost for the Equipment, for a total of $1,571,633.45.

Thus, the actual loss caused by Defendants' default in this case is $1,571,633.45. This total greatly exceeds liquidated damages amount of $903,626.35, which was calculated by Plaintiff. (Doc. 12-10 at 5). In light of the fact that the actual harm to Plaintiff exceeds the amount of damages as calculated by the liquidated damages provision, it is clear that the liquidated damages provision is reasonable "in light of the then-anticipated harm caused by the default." Accordingly, the liquidated damages provision of the leases is enforceable against Defendants.

Thus, all that is left for the court is to determine is the precise amount of liquidated damages owed. Plaintiff contends that Defendants owe $903,626.35, plus interest, attorneys' fees, and costs as allowed by the Lease, Guaranty, and applicable law. (Doc. 13 at 14). Pursuant to the liquidated damages provision of the lease: "Upon the sale of any item of Equipment, Lessee will pay to Lessor immediately, as liquidated damages for loss of bargain and not as a penalty, the amount, if any by which the Stipulated Loss Value exceeds the net sales proceeds of

---

[6] Lessor's cost on the Schedule One Equipment was $1,271,545.00 and its cost on the Schedule Two Equipment was $635,920.00 for a total cost of $1,907,465.00. (Docs. 12-4, 12-7). One quarter of $1,907,465.00 is $476,866.25.

such Equipment in addition to all other amounts due." (Doc. 12-3 at 3-4). The Stipulated Loss Value is calculated by multiplying the "Lessor's Cost as shown on the applicable Schedule ... by the Stipulated Loss Factor as of the applicable date and as designated on Exhibit A to such Schedule." (*Id.* at 2).

Here, Plaintiff has submitted the affidavit of Gregory Robinson for the contention that the operative Stipulated Loss Factor is 73.94% for the Schedule One trucks and 83.95% for the Schedule Two trucks. (Doc. 12-10 at 3). However, in the affidavit, there is no discussion of what lease payments were missed or how many rental payments had previously been made.[7] Without this information, the court cannot determine which Stipulated Loss Factor to correctly apply to the calculation. As such, the court cannot make a final determination of the liquidated damages amount at this time.

## IV. CONCLUSION

For the reasons discussed in detail above, the court finds that Plaintiff has demonstrated that it is entitled to judgement as a matter of law on its claims. The court further finds that the liquidated damages provision contained in the leases is enforceable and is the appropriate method for calculating damages in this case. However, based upon the record currently before the court, the undersigned cannot accurately calculate damages. Accordingly, Defendants' Motion for Partial Summary Judgment (doc. 11) is **DENIED** and Plaintiff's Motion for Summary Judgment (doc. 12) is **GRANTED IN PART**, as set forth herein.

The parties are **ORDERED** to meet and confer to determine whether they can reach an

---

[7] The court recognizes that Plaintiff's Response in Opposition to Defendants' Motion for Partial Summary Judgment (doc. 14 at 10-11) discusses this information. However, this information is not contained in Mr. Robinson's affidavit or the other evidence before the court.

agreement as to the proper damages award under the leases in light of the foregoing Memorandum Opinion. If the parties reach an agreement, they are to file a notice with the court detailing said stipulated damages award by **April 12, 2013**. If the parties are unable to reach an agreement, Plaintiff is to file supplemental evidence justifying its damages, being sure to account for interest, costs, and reasonable attorneys' fees by **April 12, 2013**. Defendants shall have until **April 19, 2013** to respond to Plaintiff's proffer. At that time, the court will enter a final judgment in favor of Plaintiff in the appropriate amount.

      **DONE** this 29th day of March, 2013.

                                       _/s/ John E. Ott_
                                       **JOHN E. OTT**
                                       Chief United States Magistrate Judge